**[J-69-2022] [OISA: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 10 WAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered December |
| | : | 23, 2020 at No. 176 WDA 2020, |
| v. | : | affirming the convictions and |
| | : | vacating the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| RYAN MICHAEL DUNN, | : | Allegheny County entered |
| | : | September 11, 2019 at No. CP-02- |
| Appellant | : | CR-0014780-2018, and remanding. |
| | : | |
| | : | ARGUED:  October 26, 2022 |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE WECHT**                                    **DECIDED:  June 23, 2023**

I join Justice Donohue's Opinion in Support of Reversal ("OISR").  I write to supplement that well-reasoned analysis with a few additional thoughts.

I agree with Justice Mundy's Opinion in Support of Affirmance ("OISA")[1] that our discovery rules apply with full force to expert witnesses who testify pursuant to 42 Pa.C.S. § 5920.  I also agree that the Commonwealth's last-minute disclosure of its intent to call such an expert in this case violated the requirement of Rule 573(D) of the Pennsylvania Rules of Criminal Procedure that the Commonwealth "promptly notify" the defendant of the identity of any additional witness that it intends to call at trial.[2]  The language of the

---

[1]      Hereinafter, uses of "OISA" generally refer to the Opinion authored by Justice Mundy.  References to Chief Justice Todd's OISA are so specified.

[2]      Pa.R.Crim.P. 573(D) ("If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness

Commonwealth's belated disclosure in this case indicates that it represented an attempt to induce Ryan Michael Dunn into accepting a guilty plea rather than proceeding to trial.[3] The Commonwealth sent this correspondence mere hours before jury selection. The trial court should have appreciated that it was palpably unfair for the Commonwealth to threaten Dunn with "trial by ambush" in this manner.[4] The trial court's refusal to provide any remedy to Dunn was error.

As for the nature of the remedy, the OISA faults Dunn for declining to explicitly request a continuance, and it suggests that a continuance would have sufficed to cure any prejudice that Dunn sustained.[5] Justice Donohue rightly "questions" a rule that

---

or witnesses, such party shall *promptly notify* the opposing party or the court of the additional evidence, material, or witness.") (emphasis added).

Although it concludes that the Commonwealth violated this prompt notification requirement, the OISA notes that there is no fixed period specified in Rule 573 within which such notifications must be provided, and it refers that matter to the Criminal Procedural Rules Committee for consideration. OISA at 20. I agree that this is a worthy task. The committee should explore whether Rule 573 would benefit from a more concrete framework for the timeliness of the required disclosures, in order to alleviate any ambiguity and to avoid potential litigation over the meaning of a "prompt" notification. A specified number of days might be warranted. Alternatively, a requirement that trial courts set individualized discovery deadlines tailored to the needs and schedule of each case may be beneficial.

[3] *See* Email from Assistant District Attorney to Trial Counsel, 6/3/2019, at 4:25 p.m. (reproduced in Dunn's Br. at 9) ("Please see the attached documents. I intent [*sic*] to call Jamie Mesar as per 42 Pa.C.S.A. [§] 5920. *Please let me know whether the defendant is willing to consider other offers.* I'll see you tomorrow.") (emphasis added).

[4] *See Commonwealth v. Shelton*, 640 A.2d 892, 895 (Pa. 1994) ("It is well established in this Commonwealth that the purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial. Trial by ambush is contrary to the spirit and letter of those rules and cannot be condoned.").

[5] *See* OISA at 22 ("Importantly, Dunn also never explicitly request[ed] a continuance, which is generally 'deemed sufficient to eradicate possible prejudice and enable the defendant to assimilate new information.'") (quoting *Commonwealth v. Rosa*, 609 A.2d 200, 204 (Pa. Super. 1992)).

"places the burden on the defendant to mitigate the Commonwealth's violation of the discovery rules and then penalizes him for not doing so."[6] I would do more than question such a rule. I would reject it outright. The consequences of one party's abuse of the discovery rules should not fall upon the other. Forcing Dunn to clean up the Commonwealth's mess is no remedy at all.

Moreover, a continuance may not be in the defendant's best interest. The defendant may be incarcerated while awaiting trial, and thus every day that trial is delayed is a day that he is deprived of his liberty. To make the consequence of that delay more concrete, the party who requests a continuance is typically the party to whom the delay is attributable for purposes of assessing the Commonwealth's compliance with its speedy trial obligations under Rule 600.[7] Accordingly, it very well may be against the defendant's interest for him to request a continuance that he would not need but for the Commonwealth's gamesmanship or neglect (whichever it may be). Dunn's trial counsel here made a reasonable calculation that Dunn's best interest would be served by exclusion of the expert testimony, or, failing that, the provision of an adequate expert report that would fairly apprise him of the substance of the forthcoming testimony. Dunn should not be punished for declining to request a continuance that would merely have excused the Commonwealth's dereliction and given it yet more time to prepare its case against him.

---

[6] OISR (Donohue, J.) at 15.

[7] Pa.R.Crim.P. 600. *See* Pa.R.Crim.P. 600(C)(3)(a)(i)-(ii) (providing that when a trial court grants a continuance, it shall "record the identity of the party requesting the continuance" and shall "record to which party the period of delay caused by the continuance shall be attributed"). The Comment to Rule 600 gives examples of delays attributable to the defendant and includes delay resulting from "any continuance granted at the request of the defendant or the defendant's attorney." Pa.R.Crim.P. 600, *Comment.*

Turning to the adequacy of the "expert report" in this case, I share Justice Donohue's view that Mesar's boilerplate letter was overly generic and insufficient to inform Dunn of the substance of Mesar's proposed testimony.[8] But specificity has its own dangers as well. Should an expert's trial testimony become too specific, there is a risk of it running afoul of this Court's decisions in *Commonwealth v. Dunkel*[9] and *Commonwealth v. Jones*[10] as impermissible commentary on the credibility of the victim. In *Dunkel*, we held that expert testimony concerning the typical behaviors of sexually abused children was impermissible, in part because it "would infringe upon the jury's right to determine credibility."[11] In *Jones*, we acknowledged that the General Assembly, by enacting 42 Pa.C.S. § 5920, "effectively overruled" *Dunkel* to the extent that *Dunkel* held that such expert testimony was categorically impermissible.[12] Yet, we concluded that *Dunkel* remains viable to the extent that it prohibits expert commentary on the credibility of the victim.[13] Whether expert testimony violates this prohibition, *Jones* holds, is to be "assessed on a case by case basis."[14]

In light of *Jones* and *Dunkel*, it would seem that the more that an expert's testimony is specifically tailored to the facts of the case and to the behavior of the victim, the more

---

[8]    *See* OISR (Donohue, J.) at 10-12.

[9]    602 A.2d 830 (Pa. 1992).

[10]   240 A.3d 881 (Pa. 2020).

[11]   *Dunkel*, 602 A.2d at 837.

[12]   *Jones*, 240 A.3d at 895.

[13]   *Id.* at 896-97. Moreover, as emphasized in *Jones*, Section 5920(b)(3) additionally precludes an expert from offering an opinion on the credibility of another witness. 42 Pa.C.S. § 5920(b)(3) ("The [expert] witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.").

[14]   *Jones*, 240 A.3d at 896-97.

likely it is to be deemed to constitute impermissible bolstering of the victim's credibility. Of course, this is a concern about the conduct of the trial. But it is all the more reason for prompt and meaningful pretrial disclosure of the substance of an expert's opinion. Otherwise, the defendant cannot ascertain whether there is a basis for objection on *Jones*/*Dunkel* grounds or on some other basis.[15] For this reason, I join Justice Donohue in concluding that the purported "expert report" provided to Dunn—a form letter containing only a few paragraphs of generalities about sexual abuse victims—was woefully inadequate to apprise Dunn of the testimony that the Commonwealth intended to present at trial imminently.

However, like Justice Donohue, my most significant disagreement with the OISA lies in its analysis of the prejudice that Dunn sustained as a result of the Commonwealth's tardy disclosure. The OISA dubiously asserts that Dunn has presented only "broad and non-specific allegations" of prejudice.[16] This characterization is undermined by the OISA's own words. Immediately preceding that portrayal of Dunn's advocacy, the OISA provides a summary of the "themes" that Dunn argues: that the Commonwealth's last-minute disclosure "prevented him from conducting independent research, developing a comprehensive cross-examination, making a knowing and intelligent decision about whether to hire his own expert, making a robust pretrial challenge to the admission of the testimony, and reflecting on how the testimony would bear upon all of the other evidence

---

[15]    *See* Dunn's Br. at 35 ("In light of *Dunkel*'s continued viability . . . along with *Jones*'s mandate that the appropriate scope of Section 5920 expert opinions must carefully be assessed on a case-by-case basis, it is nothing short of essential that criminal defendants be given notice, well in advance of trial, of the Commonwealth's intent to call such an expert *and* that they be provided with a *detailed* report of the expert's proposed testimony.") (emphasis in original).

[16]    OISA at 22.

presented at trial."[17]  These assertions of prejudice are neither "broad" nor "non-specific." They are clear recitations of the particular ways in which the Commonwealth's conduct deprived Dunn of his ability to optimize his trial preparation and strategy.

But Dunn's advocacy is even more precise than that.  Dunn's present counsel tracked down and reviewed all of the articles that Mesar cited as support in her "expert report," and discovered numerous potential inconsistencies between Mesar's proffered testimony and the medical research upon which she purported to rely.[18]  These inconsistencies could have undercut Mesar's opinions about matters such as whether certain characteristics of sexual abuse predict delayed disclosure, whether a familial relationship between the victim and abuser makes it more difficult for a child to disclose, and whether an abuser's threats affect the rate of disclosure.[19]  Dunn's counsel notes that some of these articles were not readily available online, so she had to seek the assistance of a medical librarian at UPMC-Mercy Hospital, which is "definitely not something trial counsel could have accomplished overnight."[20]  Plainly, had defense counsel been able to review this medical literature and to discover inconsistencies between the prevailing research and Mesar's testimony, this would have allowed for a much more robust cross-examination.  This line of advocacy further distinguishes the present circumstance from *Commonwealth v. Counterman*, which the OISA cites for the proposition that "generalized allegations of prejudice" are insufficient.[21]  *Counterman* qualified this "generalized allegations" characterization by noting that the appellant failed to explain how earlier

---

[17]  *Id.*

[18]  *See* Dunn's Reply Br. at 26-28.

[19]  *Id.* at 26-27.

[20]  *Id.* at 26 n.12.

[21]  OISA at 22 (citing *Commonwealth v. Counterman*, 719 A.2d 284, 298 (Pa. 1998)).

disclosure of the statements at issue in that case "would have altered his cross-examination or voir dire."[22]  Not only are Dunn's allegations of prejudice highly specific, but he also demonstrates precisely how earlier disclosure of Mesar's letter would have allowed him to challenge Mesar's testimony on cross-examination.

Moreover, Dunn has identified another expert that the defense could have retained to counter Mesar's testimony.  William O'Donohue, Ph.D., is a professor of psychology at the University of Nevada, Reno, who has testified for the defense and been qualified as an expert under Section 5920 in previous cases in this Commonwealth.[23]  Dunn provides a detailed summary of the opinions that Dr. O'Donohue offered in a previous case, which opinions would have contradicted much of Mesar's testimony.  But the substance of Dr. O'Donohue's previous testimony is not the point; Dunn merely uses it to highlight the fact that there were options available had the defense been afforded sufficient time to retain its own expert before trial.  And it is obvious that the ability to hire a defense expert such as Dr. O'Donohue would have had a significant impact upon Dunn's trial strategy.

For these reasons, the OISA's dismissive depiction of Dunn's assertions of prejudice as "broad and non-specific" is an abject mischaracterization.  It is telling that the OISA makes no effort to address Dunn's highly particularized illustrations of the ways that a timely disclosure of the Commonwealth's intent to call Mesar would have allowed him to better prepare his defense.  Dunn explains exactly how the Commonwealth's last-minute notice harmed his trial strategy and preparation.  He details precisely how he could have used Mesar's own materials to poke holes in her testimony.  And he identifies an expert whom he might have been able to employ in his defense, had he not been deprived

---

[22]    *Counterman*, 719 A.2d at 298.

[23]    *See* Dunn's Reply Br. at 14-26.

of time by the Commonwealth's eleventh-hour ambush.  One is left to wonder what more Dunn possibly could have argued in order to clear the hurdle that the OISA erects.

Chief Justice Todd likewise finds Dunn's arguments concerning prejudice to be inadequate, less because of their substance than their timing.  The Chief Justice contends that Dunn "does not describe, in any detail," what he would have done differently at trial had he been provided sufficient notice of Mesar's testimony, suggesting that he does not, for instance, "proffer research that would have undermined Mesar's testimony" or "provide questions he would have asked on cross examination."[24]  Of course, as discussed above, none of this is correct.  Indeed, in her very next sentence, Chief Justice Todd readily acknowledges that Dunn *does*, in fact, provide such details; yet, because these arguments appear in his reply brief, "that effort was too late."[25]  This curious conclusion comes notwithstanding the Chief Justice's acknowledgment that Dunn provided these arguments in *reply* to the Commonwealth's argument.[26]  And although the Chief Justice's objection to Dunn's advocacy is that he did not develop these points in his principal brief, she emphasizes that reply briefs are intended to allow a response to "matters raised by appellee's brief . . . *and not previously addressed in appellant's brief*,"[27] which would seem to be exactly what we are talking about here.  This reasoning—"too late"—is an elevation of form over substance, and bad form at that.  Unlike most overly formalistic justifications, this one is not even faithful to the language of the governing Rule.  Such a

---

[24]  OISA (Todd, C.J.) at 2.

[25]  *Id.*

[26]  *Id.* ("It is true that, after being criticized by the Commonwealth for these lapses, Dunn attempts to provide some such detail in his reply brief.") (citation omitted).

[27]  *Id.* (quoting Pa.R.A.P. 2113(a)) (emphasis in original).

conclusion comes dangerously close to sending the message to litigants that reply briefs just don't really matter.

Perhaps aware that its analysis of the prejudice to Dunn's trial strategy is less than fully persuasive, the OISA falls back upon an assertion that the "incriminating nature of the facts in this case do not lend themselves to a finding of prejudice."[28] The OISA then proceeds through what is effectively a repackaged harmless error analysis, opining that certain text messages that Dunn sent to the victim were so overwhelmingly inculpatory that there is no way that the absence of the Commonwealth's discovery violation could have affected the outcome.[29] It is true that some of this Court's precedents appear to endorse such an "outcome-determinative" standard for evaluating prejudice in the context of discovery violations.[30] However, like Justice Donohue, I question whether this variety of "prejudice" is suitable to the present inquiry, particularly where other precedents of this Court have analyzed the matter in different ways without acknowledging any disparity, *e.g.*, by looking for an impact upon the defendant's trial strategy, or by determining whether a discovery violation deprived the defendant of a fair trial. The word "prejudice" carries numerous meanings in the law.[31] The resolution of the differing formulations and

---

[28] OISA at 24.

[29] Of course, if this is true, then it raises the question of why the Commonwealth ostensibly believed that it required Mesar's expert testimony to explain the victim's behavior in the first place. Moreover, if this was such an open-and-shut case, then it is curious that the Commonwealth elected to run the risk of giving Dunn such a late and minimal disclosure of its intent to call Mesar, effectively handing Dunn a potentially reversible issue on appeal. Apparently, at the time of trial, the Commonwealth was not content to rest its case solely on Dunn's text messages.

[30] *See* OISR (Donohue, J.) at 18 n.13, and the cases cited therein.

[31] For instance, "[p]rejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Keaton*, 45 A.3d 1050, 1061 (Pa. 2012). This is the "outcome-determinative" sense in which the OISA uses the

adoption of a uniform standard for evaluating prejudice in the context of discovery violations is an issue that is worthy of this Court's attention in a future case. That, however, is outside the scope of the present appeal.

I agree with Justice Donohue that the OISA's approach to the prejudice inquiry "appears to be applying a variation of the harmless error doctrine, albeit with the burden ostensibly flipped to Dunn."[32] I further agree that the OISA errs in this effort. Although the OISA is correct that the text messages it highlights appear to be highly inculpatory, Dunn presented the jury with an explanation for them—namely that he had sent the victim a risqué photograph of her mother, and that all of the referenced text messages concerned that photograph.[33] To be sure, I do not find this explanation particularly compelling. Many of Dunn's text messages strike me as inculpatory. But I am not a juror.

---

term, at least in part of its Opinion. But that flavor of prejudice is very different than, for example, the "prejudice" assessed under Rule of Evidence 403, which instructs a court to exclude evidence "if its probative value is outweighed by a danger of . . . unfair prejudice." Pa.R.E. 403. Prejudice in that sense "means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, *Comment*. And that is different still from dismissal of a claim "with prejudice," meaning that it may not be brought again. The word "prejudice" is not a universal signal that we must determine whether an error affected the outcome of a trial.

[32]   OISR (Donohue, J.) at 22. Of course, because this Court in *Commonwealth v. Hamlett*, 234 A.3d 486 (Pa. 2020), held that appellate courts may raise and decide the question of harmless error *sua sponte*, I do not believe that there is anything left of the Commonwealth's "burden" to prove harmless error. Rather, it is a matter that this Court may raise whenever we feel the inclination to advocate on the Commonwealth's behalf. *See Hamlett*, 234 A.3d at 495-523 (Wecht, J., dissenting).

[33]   The OISA acknowledges this explanation and notes that the victim even acknowledged that *some* of the text messages were in reference to the photograph. OISA at 25 ("According to the victim, Dunn was referencing the circumstances surrounding the photograph, as well as his past sexual abuse of the victim and fear that additional information may come to light during any investigation.") (citation omitted).

For an error to be deemed "harmless because there is properly admitted overwhelming evidence of guilt, the untainted evidence relied upon must be uncontradicted."[34] As Chief Justice Emeritus Saylor once commented, "while there may be some divergent views regarding the precise contours of what constitutes contradicted evidence, the gravamen of that aspect of the harmless error framework is that the appellate courts should not attempt to replicate the jury's role in weighing the parties' competing advocacies when assessing the comparative import of improperly admitted evidence."[35] However implausible Dunn's explanation may appear from our appellate perch, evaluating the credibility of that explanation is not this Court's prerogative. Because Dunn refuted the inferences that the Commonwealth sought to have the jury draw from the text messages, there is no "uncontradicted" evidence upon which we may premise a harmless error analysis. And because we cannot rely upon contradicted evidence in the harmless error context, we also should not consider such evidence in assessing "prejudice," in the outcome-determinative sense.

In all other respects, my views align with those expressed by Justice Donohue. I accordingly would reverse the order of the Superior Court.

Justices Donohue and Dougherty join this opinion in support of reversal.

---

[34] *Commonwealth v. Story*, 383 A.2d 155, 166 (Pa. 1978).

[35] *Commonwealth v. Jacoby*, 170 A.3d 1065, 1099 n.4 (Pa. 2017) (Saylor, C.J., dissenting).